Mitchell County, Appellee, v. O. L. Odden et al., Appellants.
No. 42696.

March 12, 1935.

Darwin J. Paulson, Conway & Bartlett and Carr, Cox, Evans & Riley, for appellants.

William H. Salisbury and H. R. Duncan, for appellee.

HAMILTON, J.—The plaintiff, in its petition, alleges: That some time in the year 1919, drainage district No. 3 was created and established in Mitchell county, Iowa, by the board of supervisors of said county, and bonds were issued against the district; that on the 1st day of November, 1930, O. L. Odden, as treasurer of said county, paid to the holders of said bonds the sum of $4,120, being principal and interest; that at the time of said payment there was only $1,752.66 in the funds of said drainage district; that to make up the difference the treasurer withdrew $2,367.34 from the funds of Mitchell county, other than those of the drainage district, thus cre-ating an overdraft in the drainage district account of $2,367.34; that at the time of said payment the Aetna Casualty & Surety Company was surety upon the official bond of O. L. Odden; that in November, 1931, the supervisors of said county attempted to make a new levy and assessment against said drainage district No. 3, which was denied by the district court.

Said petition alleges that, in the making of said payment as aforesaid, the treasurer was highly negligent; that in so doing he violated the Iowa statutes relative to the handling and disposal of said funds; that he had no authority to use the funds of the county in the payment of said bonds; and that by virtue of said illegal, negligent, and unauthorized act of said O. L. Odden, as treasurer, Mitchell county has been damaged to the amount of $2,367.34, and plaintiff asks for judgment in this amount, with interest, against O. L. Odden and his surety, the Aetna Casualty & Surety Company.

Appellants summarized their defense as follows:

In division 1 of the answer it is denied that the county treasurer committed any wrongful act or violated any duty which could be construed to be a breach of his bond.

In division 2 it is pleaded that the plaintiff is estopped to complain.

In division 3 it is alleged that the plaintiff has, in reality, suffered no loss, and moreover, that the loss, if any, which is asserted by plaintiff, was the result of the plaintiff's own negligence, and not of any act of the treasurer.

In division 4 it is pleaded that plaintiff has waived all that is now complained of.

In division 5 the defendants pleaded the right of subrogation, by which the defendants are entitled to set off or counterclaim the liability of the plaintiff in the event any sum is found to be due by the treasurer to the county.

In division 6 they plead the unconscionable character of plaintiff's claim; the injustice which would result in the event of recovery; the multiplicity and circuity of actions which would necessarily result before justice could be accomplished; and the inadequacy of the defendants' legal remedy; and pray for dismissal of the petition, judgment for the defendants, for an injunction against the prosecution of any further claim against the defendants, and for other equitable relief.

Upon motion of the defendants, the cause was transferred to equity and tried to the court without a jury, which resulted in a decision and judgment for plaintiff.

There seems to be little or no dispute as to the facts. The case was tried on an agreed stipulation of facts. The particular propositions urged by appellants for reversal are that plaintiff has pointed out no specific violation of statute by the treasurer; that the treasurer's acts were done at the specific direction of the plaintiff's board of supervisors; that the treasurer rendered a complete report and accounting to said supervisors, which was accepted and approved by them, and the wrongful acts, if any, were committed by the plaintiff through its board of supervisors; that the plaintiff has in reality suffered no loss, because the payments made by the treasurer satisfied and discharged an obligation and liability of the county, for, had the payments not been made by the treasurer, the county would have been liable for negligence in failing to make the levy and collect the drainage assessments and for breach of recitals in the bonds, the loss which is asserted being the result of plaintiff's own negligence and not due to any act of the treasurer. Appellants further contend:

That if any amount is found due the county from the treasurer, they claim an equitable right of subrogation to the rights of the bondholders, for the county, being bound to levy the assessment, and failing to do so, is liable for negligence in not making same, and, had the treasurer not made the payment, the bondholders could have sued the county and recovered in damages; hence, since the county treasurer satisfied this liability, the right of the bondholders is in equity kept alive for the purpose of subrogation, and therefore

any claim asserted by the county is offset by the county's liability for negligence in not providing the funds to meet the bonds.

That the plaintiff is bound, in the absence of fraud, by the acts of the board of supervisors, acting pursuant to its statutory powers and within the scope of its authority, and therefore the plaintiff is estopped in equity by the negligent acts of said board in failing to make the necessary levy and collect proper and sufficient drainage assessments.

That the county thus violated the pledge contained in the bonds to the effect that proper and sufficient assessment had been levied and that the amount of the bonds did not exceed the assessment, and by its own acts thus created the deficiency and alleged loss, about which it is now complaining; that no act of the county treasurer was responsible for this negligence or the creation of the alleged loss, and, therefore, the plaintiff cannot be heard to complain of what the treasurer did, which only served to satisfy and discharge the county's obligation and liability.

That the plaintiff accepted the semi-annual reports of the treasurer, which disclosed the custom, practice, or course of dealing, that is, of taking from the general county funds, from time to time, money with which to meet the payment of bonds, and of later replacing the same from the drainage fund, which practice was carried on at the direction of, and with the knowledge of, plaintiff's board of supervisors; that these reports consistently showed the overdrafts, and were accepted and approved by the plaintiff; that the report and accounting of the treasurer for the year ending December 31, 1930, during which the payments now complained of were made, showed the overdraft, and this report was accepted and approved by the plaintiff's board of supervisors, and it is now too late for plaintiff to undo that settlement and attempt to escape its responsibility by unloading it upon an innocent official.

And, finally, that it would be unreasonable, unjust, and unconscionable to allow the plaintiff to recover from the defendants for an alleged loss for which the defendants were not in any way responsible, and for which the plaintiff itself is truly responsible; that no claim is made that the treasurer was guilty of any fraud or any act of bad faith, or that he failed to account for a single penny of the money in his hands, or that he profited one cent by the acts of which the plaintiff complains; that the payment satisfied a claim which in equity the county, because of the negligence of its board

of supervisors, should pay; that to saddle this upon the shoulders of an innocent official would be intolerable, and to allow the plaintiff to recover would amount to holding that the bondholders had no remedy for a breach of the bonds, and that notwithstanding the county's solemn pledge, contained therein, those bonds, to the extent they exceeded the amount of the drainage fund, were mere, worthless scraps of paper.

The facts are undisputed, and we will recite only sufficient thereof to give a proper understanding of the discussion of the principles involved in the determination of the case.

In the year 1919 the board of supervisors of Mitchell county, Iowa, created and established drainage district No. 3. The original assessment against the lands in the district was made in accordance with, and based upon, estimates made by the commissioners for the drainage district. The assessment was made by virtue of a resolution of the board of supervisors of Mitchell county, in the exact amount of said estimate of the commissioners, which proved to be insufficient to meet all the costs of said improvement. Repairs were later made in the sum of $864.34. Also, there were reductions in assessments against individual property owners, totaling $1,225, an allowance to a contractor for extra work, and a few other small items, all of which added to the deficit. The board of supervisors of Mitchell county, Iowa, issued and sold bonds against said drainage district No. 3, and the bonds in question were duly and legally issued by virtue of a resolution of said board. The county auditor prepared and furnished the treasurer a drainage tax list, wherein were entered the names of the property owners in said district, descriptions of such property, and the amounts of the tax installments and interest to be paid, and the treasurer, as and when the tax was collected from time to time, credited the same therein. This tax list was in the hands of the treasurer at the time of the payment of the bonds in question. This tax record showed that the last installment of the assessment was payable on the first Monday in January, 1930. The bonds which were paid by the county treasurer, the payment of which created the overdraft which is the basis of this suit, were due and payable on November 1, 1930, and were on that day presented by the holders for payment and were paid direct by the treasurer in the amount of $4,000 principal and $120 interest, or a total of $4,120, without the issuance of any warrants. At the time the treasurer paid these bonds, there was only $1,752.66 in

the drainage fund of said district No. 3 available for payment of the bonds, and the amount of the funds in said drainage district No. 3, at that time and at all times since, lacked $2,367.34, of equaling the amount of principal and interest on said bonds, which amount was paid by the treasurer from funds of Mitchell county, Iowa, other than those of said drainage district. At that time all the assessments had been collected which had been levied, and there were no other drainage funds to be collected to replace the overdraft thus created. This payment was made by O. L. Odden while acting and serving in his official capacity as county treasurer of the plaintiff county, which office he held from January 1, 1921, and was still in office on October 19, 1933, the date of the trial. His codefendant, the Aetna Casualty & Surety Company, was surety on his official bond from January 1, 1929, to January 1, 1931, in the amount of the statutory requirement of $10,000.

On November 9, 1931, the board of supervisors attempted by resolution to levy a new and additional assessment against the property of said drainage district to take care of said tax deficit in said district, which action of the board was later, in a suit brought against Mitchell county et al., at the instigation of one William Allison, held by the district court of said county to be illegal and void, and of no force and effect.

The bonds in question are all in the statutory form and all contain the statutory provision that "this bond is based upon and constitutes a lien upon and is payable solely out of the proceeds of the special assessments for benefits, heretofore legally levied on the lands benefited, and the said special assessments are hereby irrevocably pledged therefor," and also contain the following provision:

"And it is hereby certified and recited that all acts, conditions and things required to be done in locating and establishing said Drainage District, in making and levying of said assessment against the lands benefited thereby, and precedent to and in the issuing of this bond, were and have been legally had, done and performed and that the total amount of bonds issued on account of said Drainage District does not now exceed the assessment so levied therefor, unpaid at the time said bonds are issued, nor any legal limitations thereon. For the performance of all the covenants, recitals and stipulations herein contained, and for the collection and application of the said assessment, and of the interest thereon, and such

other and further assessments authorized or required to provide for the prompt payment of this bond and interest thereon, the faith and resources of said County are hereby fully pledged."

I. Appellants' contention, that the plaintiff failed to point out or show that the act of the treasurer in paying the bonds out of the county's funds violated any specific provision of the Iowa statutes, cannot be sustained.

Section 5156 of the 1931 Code of Iowa provides that:

"The treasurer shall receive all money payable to the county, and disburse the same on warrants drawn and signed by the county auditor and sealed with the county seal, and not otherwise, etc."

Section 7417 of said Code provides that:

"If any auditor or treasurer or other officer shall neglect or refuse to perform any act or duty specifically required of him, such officer shall be guilty * * * and he and his bondsmen shall be liable on his official bond for such fine, and for the damages sustained by any person through such neglect or refusal."

Section 5258 of said Code provides that:

"It shall be unlawful for any county, or for any officer thereof, to allow any claim, or to issue any warrant, or to enter into any contract, which will result, during said year, in an expenditure from any county fund in excess of an amount equal to the collectible revenues in said fund for said year, plus any unexpended balance in said fund for any previous years."

Section 7504 of the Code provides that the bonds shall contain a provision that:

"That it is to be paid only from taxes for levee and drainage improvement purposes levied and collected on the lands assessed for benefits within the district for which the bond is issued."

The defendant O. L. Odden had been serving as county treasurer for more than ten years, and we must assume that he was fully conversant with the statutes above quoted, and under the law he is conclusively presumed to know the provisions thereof, and it certainly cannot be said that his action in making payment out of the county's funds (knowing that there were no other drainage funds to be collected with which to replace the amount taken from the

county's funds) is not a violation of the statutes of the state, when the statute, as well as the bonds, contained the glaring, specific proviso that they were payable *solely* from drainage funds.

II. Appellants' contention that the county has, in reality, suffered no loss is likewise untenable.

That the county has sustained a loss in the first instance in the taking of $2,367.34 from the county's funds, as was done by the treasurer in this instance, can admit of no question, and that this loss is chargeable directly to the action of the county treasurer is equally plain, and that it is such a loss or damage for which the person sustaining such loss or damage has a right of action against the treasurer and his bondsmen under the statute seems clear to us.

 Whether or not the right of subrogation exists, depends upon the question of whether, under the law, there is any right of action against the county for the alleged negligence of its board of supervisors.

This matter was settled adversely to appellants' contention in the case of Yockey v. Woodbury County, 130 Iowa 412, 106 N. W. 950, 952, wherein this court said:

"The board of supervisors is not the county. The county, as a public *quasi* corporation, can only act through its officers; but it is not liable for or bound by their acts, save as they have authority to bind it. On the other hand, the officers may have duties and be subject to liabilities in their official capacity which in no way affect or involve the corporation. * * * In so acting it does not in any way represent the county. The county as a corporation has nothing more to do with its action that it has to do with the action of a justice of the peace, exercising as he does a limited jurisdiction, or the district court for the county, exercising a general jurisdiction. The county is not responsible for the judicial acts of its board of supervisors, nor is it interested in them. It may be rendered liable by the action of the board, if the matter is one concerning the county as to which the board is authorized to adjudicate its liability; otherwise, it is in no sense a party to the proceedings. * * * The assessments are not payable to it if they are made, and the failure to make them does not in any way render it liable."

In the case of Board of Supervisors of Worth County v. District Court of Scott County, 209 Iowa 1030, at page 1033, 229 N. W. 711, 712, we said:

"The relief sought in the first instance is a judgment at law against the defendants for the aggregate amount due on plaintiff's bonds, with interest and costs. Our first inquiry is whether or not plaintiff is entitled to a judgment at law against the defendants as prayed. Clearly the plaintiff has no cause of action against Worth county. Said county has incurred no liability to the plaintiff. Sisson v. Board of Supervisors, 128 Iowa 442, 462, 104 N. W. 454, 70 L. R. A. 440."

We also held in the Worth County case, supra, that a drainage district is *sui generis*. It is not a corporation, and cannot be sued. It can incur no corporate liability. Under the statute its affairs are managed by the board of supervisors *in a representative capacity*. We also held in said case that the plaintiff was not entitled to a judgment at law against the board of supervisors because they act wholly in an official or representative capacity under the express provisions of the drainage statutes, and that "it therefore follows that the plaintiff's action is solely against the board of supervisors of Worth county, in their official capacity as representatives of the said drainage district, under the terms of the statute. Code, section 7519." This right of action is limited within the purview of the statutory duties of the board of supervisors, acting in their official and representative capacity, under the drainage statutes.

In the case of First National Bank v. Webster County, 204 Iowa 720, 216 N. W. 8, 10, the bank was the owner of a county warrant which was issued by the county for a corrugated iron culvert sold by the culvert company to a drainage district of Webster county. We said:

"One contracting with the district, through the board, by force of the law, commits to the board the duty to proceed in his behalf for the levy of the necessary assessment. His remedy is to see that the board does this."

In the case of Sisson v. Board of Supervisors, 128 Iowa 442, supra, we said:

"Each bond issued must show that it is based upon a tax levied on the lands within the drainage district, and it can be paid only from taxes so levied and collected. Bonds thus issued cannot be held to constitute an obligation of the county as a whole."

Hence, we conclude that there would be no right of action against the county proper by the bondholders for the tortious acts of the board of supervisors, acting purely in a representative or governmental capacity, and, therefore, appellants' theory with reference to right of set-off or counterclaim against the county must fail, and, with it, their claim to equitable right of subrogation.

III. This leaves nothing but appellant's claim of waiver and estoppel, and its general contention that to permit the plaintiff to recover would be unjust, inequitable, and unconscionable, all of which will be considered together.

These all have for their basis or premise the theory or claim of appellant that the entire blame lies at the door of the board of supervisors of the county, and since the county acts only through its officers—the board in this instance—any neglect or omission of duty on the part of such board is attributable to the county. In the first place, the premise is false; and, in the second place, the legal conclusion is unsound. It cannot be said that none of the blame is attributable to the treasurer, for, on the contrary, had he not breached his official duty and acted adversely to the statute and the very recitals in the bond when the bonds were presented for payment, and had he stopped when the funds of the drainage district were exhausted, there was still time to overcome the result of all the neglect of omission or commission on the part of the board of supervisors; provision for additional levy and assessment to meet the deficit of principal and interest on bonds, under such circumstances, having been provided by section 7509 of the Code. So, the final and proximate cause of the dilemma in which the parties find themselves in this litigation can be attributed to no one else except the county treasurer.

Appellants contend, however, that the board of supervisors accepted the semi-annual reports of the treasurer from time to time, which showed that he was overdrawing the drainage fund and paying bonds out of the general fund of the county, and that it was their duty to speak up or object to the treasurer's conduct in this respect, and, failing to do so, the county has waived its right to claim any damage. The stipulated facts show that the semi-annual reports were made and filed with the board of supervisors; that the first overdraft was due to a preliminary expense item amounting to $2,667.45, which had been paid out of the county fund, provision for which is made by statute, section 7583 of the 1931 Code. This

transfer from·the drainage district fund was under express order of the county board and left an overdraft in the drainage district fund of $1,126.63, and quite consistently thereafter the semi-annual reports would show first an overdraft and then a balance, then an overdraft and then a balance. The stipulated facts fail to show, however, any express approval of these reports or any express authorization or direction from the county board of supervisors to the treasurer with reference to any of the transfers of funds so made, except the transfer of the item for preliminary expense.

Therefore, we do not think it can fairly be said that these overdrafts were created by direction of or with the approval of the board. But even though there could be found in the record basis for the claim that the board of supervisors authorized and directed the treasurer to pay the funds out of the general county funds and thus caused the overdraft, there is no sound principle of law which· would permit the application of the doctrine of waiver or estoppel against the county, based upon unauthorized or illegal acts of its· officers.

"It is the well-settled doctrine in this country, founded upon the most substantial dictates of reason and sound policy, that the government cannot be affected by the laches of its agents, or estopped from asserting its rights against an official servant by the acts or omissions of auditors, trustees, supervisors, or other guardians of public rights. * * * We must hold that the acquiescence of the county commissioners, and the legal advice received by them, cannot protect respondent." Board of Commissioners of Hennepin County v. Dickey, 86 Minn. 331, 90 N. W. 775, 779.

In this case the county sued the county treasurer and his sureties for a conversion by him of money received as treasurer. The defense was that plaintiffs, supervisors, knowingly allowed the funds to be misappropriated. The court held. that this was no defense, and rendered judgment against the treasurer and his bondsmen. See, also, Hart v. United States, 95 U. S. 316, 24 L. Ed. 479; Supervisors v. Otis, 62 N. Y. 88; Roberts County v. Wickard, 53 S. D. 511, 221 N. W. 246; Webster County v. Taylor, 19 Iowa 117; County of Mahaska v. Ingalls, 14 Iowa 170, 171; 21 C. J. 1205.

Appellants place great emphasis upon the recitals in the bonds pledging the resources of the county, etc. A sufficient answer to this is that there is no provision of law authorizing a board of

supervisors to incorporate such provision within bonds, or authorizing a board of supervisors to pledge the resources of the county, and such act in so doing is clearly beyond their authority and *ultra vires*. The powers of the board of supervisors in respect to these matters are contained in the provisions of the statutes pertaining to the establishment of drainage districts, chapter 353 of the Code, and such statutes are strictly construed, and the powers exercised by such board must be limited to the express provisions found in the statute, and such additional implied powers necessary to carry out those expressed. Dealers in drainage bonds must be, and are, through their legal advisors, cognizant of these statutory limitations, and when buying bonds must ascertain whether or not the provisions of the law have in fact been complied with, and whether the recitals in the bonds are supported by the statute by virtue of which they are authorized to be issued.

Appellants cite and rely upon the case of Hauge v. City of Des Moines, 207 Iowa 1209, 224 N. W. 520. This was an action brought against the city to recover an amount represented by unpaid bonds for public improvements. The bonds contained recitals almost identical with the bonds in question, and the city was held liable. This court, however, said, in reference to the line of authority which is the basis of the holding of the court in the Hauge case:

"The matter of paving the streets of a city is controlled by city action, the contract for such pavement is made with the city in its corporate capacity, and its undertaking implies a corporate obligation to take the necessary steps to provide a valid assessment for payment of the contractor. In this respect the position of the city is in marked contrast with that of the county in drainage proceedings." Canal Construction Company v. Woodbury County, 146 Iowa 526, 121 N. W. 556, 558.

Under the drainage act, as we have heretofore shown, the board of supervisors acts as a special tribunal in an official or governmental capacity, and, while so acting, does not in any way represent the county as a whole in its corporate capacity. Drainage bonds are not county obligations, but under the statute are issued in payment of a purely local enterprise, on the theory that the improvement is for the special benefit of the property owners within the particular district, and the statute specifically provides that the cost thereof shall be paid solely out of special assessments levied

against the property within the district, and the bonds so recite, and the county, in its corporate capacity, as distinguished from the city, is in no way obligated, and the act of issuing the bonds is not the act of the county in its corporate capacity, but the act of its board of supervisors in its official, governmental, representative capacity, specially designated by the statute to represent the drainage district. This is emphasized by the wording of the various provisions of the drainage act. As for example, in section 7519, we find this language:

"In all actions or appeals affecting the district, the board of supervisors shall be a proper party for the purpose of *representing the district*."

Likewise, in section 7521:

"In all appeals or actions for or in behalf of the district, *the board and the drainage district it represents*," and in section 7585, "The board is authorized to employ counsel to advise and *represent it* [not the county] and drainage districts in any matter in which they are interested."

We find nothing in the record upon which the appellants can rightfully base a claim of waiver or estoppel.

As to the claim that it would be unjust, inequitable, and unconscionable to permit the county to recover, we can think of no more appropriate answer than that given by the able trial judge in his decision which is set out in the abstract:

"The fact that the Board of Supervisors failed in its duties in an assessment and tax levy as against the lands in the drainage district certainly cannot excuse the Treasurer in the management of his office in acting in violation of the positive statute as to his duties relative to the funds, of which he was the first custodian and disburser. He could have said, and should have done so—that when these bonds were presented for payment to have passed out the information—'Bonds cannot be paid for lack of funds.' * * * Then the bondholders could have selected the proper method as to securing payment. All parties would have been within the statutes, and this lawsuit would not have been in existence. In this case the Treasurer finds himself in the breach of his own act or violation, and because of the manner he conducted his office as a public servant."

In saying this we do not mean to impute to the treasurer any intention or wilful fraud or misconduct. He perhaps assumed that the board of supervisors could and would make an additional levy and assessment on the drainage district to make up this deficit, and from which the money taken from the county funds could be replaced. The board did make an attempt to do this very thing without success, which we have heretofore adverted to in this opinion.

Whether or not the district court was right (in the case of William Allison v. Mitchell County et al., heretofore referred to in our statement of facts, order and judgment in which case under the stipulation of facts is made a part of the record in this case) in holding this attempted additional assessment void, we are not here concerned. That question is not before us; no appeal having been taken from the court's decision in that case, its holding is *res adjudicata* as to that question in this particular case. It is an unfortunate situation. Under the law, the loss is covered by the recitations in the treasurer's official bond, namely, "that he will exercise all reasonable diligence and care in the preservation and lawful disposal of all money * * * appertaining to his said office, * * * that he will faithfully and impartially, without fear, favor, fraud or oppression discharge all duties now or hereafter required by his office by law, and the securities on such bond shall be liable for all money or public property that may come into the hands of such officer."

It is therefore the finding of this court that the judgment and decree of the trial court is correct, and it should be, and is hereby, affirmed.—Affirmed.

ANDERSON, C. J., and ALBERT, KINTZINGER, MITCHELL, POWERS, and PARSONS, JJ., concur.