J. W. KILPATRICK et al., Trustees, Appellees, v. MILLS COUNTY and MAURICE MAYBERRY, Treasurer, Appellants.

No. 44944.

DECEMBER 12, 1939.

Genung & Genung, for appellants.

Cook & Cook, for appellees.

HAMILTON, J.—Two warrants are involved in this appeal. One for $450 issued to Genung & Genung and W. H. T. Wellons and one for $450 issued to Genung & Genung. These warrants were issued for professional services rendered in the case entitled

Baldozier et al. v. Mayberry et al., reported in 226 Iowa 693, 285 N. W. 140; the first mentioned warrant was for services in the district court, and the second for services in this court. The attorneys were employed by the members of the board of supervisors of Mills county, acting in their representative capacity as trustees for Nishna Botna Drainage District Number Five, Mills county, Iowa. The warrants were presented for payment, duly registered by the county treasurer and endorsed not paid for want of funds and are still outstanding. Nishna Botna Drainage District Number Five is a regularly established drainage district in Mills county, Iowa, and, at the time said claims were allowed and warrants issued in payment thereof, was, by virtue of the statutory provisions contained in chapter 353, Code of 1935, under the management and supervision of the board of supervisors of Mills county. At the time the instant suit was instituted, the district was under the supervision of trustees duly elected, under the provisions of chapter 358 of the said Code, and this action was brought by such trustees against Mills county, Iowa, and Maurice Mayberry, treasurer of Mills county, in which said trustees, plaintiffs and appellees herein, allege that the issuance of said warrants against the drainage fund of said district was illegal and ultra vires and they pray that the county treasurer be enjoined from payment of said warrants and for general equitable relief.

From a perusal of the opinion in the Baldozier case, it will be observed that the contention was made that the work performed by the contractor, at the instance of the board and for which claims were filed and allowed and warrants issued in payment thereof and special assessments levied against the land in said district to cover the cost of said improvements in an amount of approximately $5,000, was performed solely for the purpose of protecting two bridges and a township road and was not for the purpose of better service in the drainage ditch or in the interest of drainage and that the lands within the district received no benefit from said work and that the expense of such work should be paid from the road fund of the county rather than from assessments against the drainage district. The plaintiffs, in said case, further alleged that no proper determination was made by the board to give it jurisdiction to incur the expense of same; that the assessments made, as

aforesaid, were illegal and void, and the plaintiffs prayed for an injunction restraining the county board of supervisors and the county treasurer from collecting such assessments. The trial court, in that case, held against the plaintiffs and an appeal was taken to this court which affirmed the lower court. The attorneys, whose claims are involved in the instant case, were employed and rendered service in defending the action of the board of supervisors, acting in their representative capacity as managers of said drainage district in making the repairs which the trial court held and which this court affirmed were for the interest and benefit of the drainage district. Mills county, in its corporate capacity, and the board of supervisors and the county treasurer, as representatives of said county in its corporate capacity, were not made parties and were in no way involved in the Baldozier case. In the instant case, Mills county, in its corporate capacity, is named one of the defendants and the county treasurer is also made a defendant; and the contention now is that, in the former case, the attorneys were employed to defend the county and not the drainage district and, hence, the county should pay the attorney fees. The additional ground is asserted, against the claim for services rendered in the supreme court in the former case, that it was allowed and paid by the board of supervisors before the services were fully performed and, hence, the employment extended beyond the time that the district was under the control of the board and, for this reason, the allowance and payment of said claim was against public policy and it is also urged that neither of said claims was properly itemized.

As a basis for his holding in the instant case, the trial court stated in the decree that:

"Said Baldozier case was one brought by land owners in said drainage district to relieve the land therein from an assessment for the repairing of the drainage ditch in said district, and was for the benefit of the land owners therein and of said drainage district. It was to the best interest of said drainage district that said action be not defended, and that a decree be entered therein ordering the cost of said repairs to be paid from the road fund of Mills County. The trial was a contest between said county and said drainage district as to which should pay for said repairs. If the board had acted for the

interests of the drainage district it would not have employed counsel, nor defended this action. The board was defending the action to prevent the costs of these repairs from being paid from the road fund of the county. No one else was adversely interested in the result of said action. The action of the board of supervisors in employing counsel and defending this action was against the interests of the drainage district and the land owners therein. Its action in so doing was solely for the benefit of Mills County in trying to protect the county road fund from the payment for said repairs. It is not equitable to permit the board to employ counsel and pay them out of the funds of the drainage district when the purpose of their employment is directly opposed to the interests of the district. The action of the board in ordering counsel to be paid from the drainage district for defending said action, and levying a tax against the land in the district to pay said warrants for such services is illegal and against public policy, and cannot be enforced against said drainage district, and the defendants should be enjoined from paying either of said last two described warrants from any funds belonging to said drainage district.''

Decree was entered accordingly. Mills county and Mayberry, county treasurer, defendants, have appealed from this decree.

We are unable to agree with the able trial court. Code, section 7519, provides:

''In all actions or appeals affecting the district, the board of supervisors shall be a proper party for the purpose of representing the district and all interested parties therein, other than the adversary parties, and the employment of counsel by the board shall be for the purpose of protecting the rights of the district and interested parties therein other than the adversary parties.''

In the case of Mitchell County v. Odden, 219 Iowa 793, 804, 259 N.W. 774, 781, we said:

''Under the drainage act, as we have heretofore shown, the board of supervisors acts as a special tribunal in an official or governmental capacity, and, while so acting, does not in any way represent the county as a whole in its corporate capacity. * * * and the act of issuing the bonds is not the act

of the county in its corporate capacity, but the act of its board of supervisors in its official, governmental, representative capacity, specially designated by the statute to represent the drainage district."

While so acting in this special capacity, the board of supervisors entered into a contract for repairing the drainage district at a cost of some $5,000. They levied an assessment in accordance with the law to cover this cost. They issued warrants in payment thereof against this fund. Certain of the property owners in the district, including the said Baldozier, brought a suit challenging the legality of the action taken by the board of supervisors, while acting in this special capacity for the drainage district, and undertook to overthrow the whole proceeding and enjoin payment of the obligations incurred by this special tribunal. According to the trial court's conception of the matter, the board of supervisors, in its special capacity as managing trustees of this drainage district, should have allowed the case to go by default and should have permitted the trial court to enter a decree finding that the proceedings were illegal and void. It would indeed be an astounding doctrine to hold that this board violated its duty, as managing trustees of this district, in employing counsel to defend its actions and proceedings whereby it had incurred an indebtedness and entered into a binding obligation to pay for the work in improving and repairing and keeping in repair the drainage system.

There is no charge of fraud. We can indulge no presumption in favor of misconduct; rather, we must presume these officers, in their particular and special capacity, were in good faith undertaking to maintain the efficiency and durability of this drainage system and they had an absolute right, on behalf of the drainage district, in the exercise of good faith, to stand behind the contract under which the work was done in the interest of the district.

That the work was done for the best interest of the district has been judicially determined in the Baldozier case. The Baldozier case was not brought by or on behalf of the district, but was an action by certain property owners in their individual capacity. They were the "adversary parties". Suppose these same parties had brought this action to enjoin the

work from its inception and the board had employed counsel to defend. Would appellees say the district should not pay? That action was not an attack against the board of supervisors, as agents of Mills county in its corporate capacity; the county was not a party to the action. The same sort of an action might be brought against these very trustees, should . they undertake a similar improvement. Would anyone say, in such event, that the trustees should let the action go by default or that they should not employ counsel to defend their valid proceedings? The answer is obvious.

The contention that the allowance of the second claim, which involved services in the supreme court, is void as against public policy because the services had not been fully performed when the claim was allowed and the warrant issued, is without merit, as is, also, the contention with reference to itemization. According to the decree, these attorneys were employed, in each instance, under an agreement to pay them the sum of $450 for their services. At the time of the last employment, the suit was pending in the supreme court. The appeal was perfected May 17, 1938; abstract filed on September 1, 1938; thereafter, on the 7th day of September, 1938, the attorneys were employed to look after the appeal at an agreed price of $450. It is not claimed that the fees were not fair and reasonable. The election, by which the management of the district was placed in the hands of trustees, was held November 19, 1938, and, we assume, they qualified by taking the oath shortly thereafter. The newly elected trustees took no steps to terminate the employment and they continued on until the case was fully submitted. It is because of the fact that there was a change in management, pending this appeal, and a portion of the services were rendered, after such change, that the contention is made that there was an attempt to extend their jurisdiction and bind the succeeding trustees and that such procedure is against public policy and thus void. We have no fault to find with the principle of law applicable where one board or body undertakes to tie the hands of a succeeding board by contract of employment for a term extending beyond the term of office of the employing board, but we do think the principle would have to be strained to make it applicable to the peculiar situation existing in this case. These particular attorneys were familiar with the case.

At the time of the employment, there was urgent need. It was an equity case and the duty of preparing and filing the first argument rested on the appellees. Just how much of the service in the preparation of the brief and argument had been accomplished before the trustees took over the management of the district is not shown. The $450 allowed was for services rendered, to be rendered, and for expenses of the attorneys in defending the case in the supreme court. Particularity in itemization, under such a contract, would serve no useful purpose. There is not sufficient merit in either of the last mentioned propositions to sustain the appellees' contentions. The trial court's decision was not based upon any such grounds.

For the reasons indicated, the decision of the trial court is reversed and the cause is remanded for a decree in harmony with this opinion.—Reversed and remanded.

CHIEF JUSTICE and all JUSTICES concur.