CITY OF EMMETSBURG et al., appellants, v. ELMER J. GUNN and
STATE OF IOWA, appellees.

CITY OF ESTHERVILLE et al., appellants, v. CLARENCE L. HACKETT
and STATE OF IOWA, appellees.

Nos. 49348
49349.

(Reported in 86 N.W.2d 829)

DECEMBER 17, 1957.

Steward & Crouch and Patrick D. Kelly, of Des Moines, for appellants.

Norman A. Erbe, Attorney General, and Frank D. Bianco, Assistant Attorney General, of Des Moines, for appellee State of Iowa.

PETERSON, J.—Elmer J. Gunn and Clarence L. Hackett were police officers in cities of Emmetsburg and Estherville respectively. On February 11, 1955, at about 1:30 p.m., Mr. Gunn was on duty and was leaving the police station to check parking meters installed and maintained by Emmetsburg. While proceeding along the street he slipped and fell on the ice and sprained his ankle. His medical and hospital bills were $22. On July 6, 1955, at about two a.m., Mr. Hackett, a police officer on night duty, was performing the task of checking and testing doors of business establishments in Estherville to ascertain if they had been tampered with, or had been properly locked. While crossing the street in the course of these duties he stepped off the curb and sustained a slight fracture of his right ankle. He incurred medical expense in the amount of $25. By stipulation the two cases have been consolidated for appeal. The trial court executed certificate that the cases are such that "an appeal to the Supreme Court of Iowa should be allowed." An important legal principle is involved. The question is whether the cities of Emmetsburg and Estherville, and their workmen's compensation carrier, are liable for the payment of the items involved, or whether payment should be made by the State of Iowa from its general fund. Evidence as to all facts was submitted to Deputy Industrial Commissioner. He considered section 85.62, 1954 Code, and ruled the State of Iowa was not liable. The Industrial Commissioner affirmed the decision of the Deputy Commissioner. On appeal to the District Court, the court affirmed the arbitration decision of

the Deputy and Industrial Commissioner. The cities and Iowa National Mutual Insurance Company, the workmen's compensation carrier, appealed.

I. The only question in this case is the intent of the legislature as to present provisions of section 85.62. Starting with Code of 1851 the legislature adopted provisions as to "Construction of Statutes." Chapter 4, 1954 Code. As to this case the only pertinent provisions are section 4.1(2): "Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such meaning." And section 4.2: "The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this code. Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice."

Referring to general provisions concerning legislative intent we quote from 50 Am. Jur., Statutes, section 223: "In the interpretation of statutes, the legislative will is the all important or controlling factor. Indeed, it is frequently stated in effect that the intention of the legislature constitutes the law. The legislative intent has been designated the vital part, heart, soul, and essence of the law, and the guiding star in the interpretation thereof. Accordingly, the primary rule of construction of statutes is to ascertain and declare the intention of the legislature, and carry such intention into effect to the fullest degree. A construction adopted should not be such as to nullify, destroy, or defeat the intention of the legislature."

Also from 82 C. J. S., Statutes, section 321: "Since the intention of the legislature, embodied in a statute, is the law, the fundamental rule of construction, to which all other rules are subordinate, is that the court shall, by all aids available, ascertain and give effect, unless it is in conflict with constitutional provisions, or is inconsistent with the organic law of the state, to the intention or purpose of the legislature as expressed in the statute. Thus, it is the duty of the court to endeavor to carry out the intention and policy of the legislature, and it has been said that in the construction of a statute, as in the construction

of a will, the paramount rule is to give effect to the intention of the maker if it does not run counter, in the case of a will, to some positive rule of law, or, in the case of a statute, to some constitutional inhibition."

The primary rule in construction of a statute, therefore, is to ascertain and give effect to the legislature's intention. We have announced the doctrine in many cases, but will cite only a few. McKinney v. McClure, 206 Iowa 285, 289, 220 N.W. 354, 356; Jefferson County Farm Bureau v. Sherman, 208 Iowa 614, 618, 226 N.W. 182, 184; Smith v. Thompson, 219 Iowa 888, 258 N.W. 190; Keokuk Water Works Co. v. Keokuk, 224 Iowa 718, 277 N.W. 291; Meredith Publishing Co. v. Iowa Employment Security Comm., 232 Iowa 666, 6 N.W.2d 6. In Jefferson County Farm Bureau v. Sherman, supra, we stated: "It is also a well-recognized rule of construction that the legislative intention is to be deduced from the language used, and the language is to be construed according to its plain and ordinary meaning." In McKinney v. McClure, supra, we said: "The purpose of statutory construction is to ascertain the intent of the legislature."

II. A history of successive legislative enactments as to workmen's compensation coverage of law-enforcement officers will be of assistance in arriving at the intention of the legislature in its latest enactment. 50 Am. Jur., Statutes, section 294, states: "where * * * the choice between constructions is nicely balanced, the terms of the statute are to be interpreted in the light of its historical background, and the courts may avail themselves of such aid as may be afforded by historical facts, or by antecedent or contemporaneous legislative history, or history of the statute. Indeed, resort to explanatory legislative history has been declared not to be forbidden no matter how clear the words may first appear on superficial examination." In McKinney v. McClure, supra, we stated: "Intention may be ascertained by historical investigation, when settled, and definite legislative policy from a series of enactments is thereby developed."

What is now chapter 85, 1954 Code (Workmen's Compensation), was originally enacted by the Thirty-fifth General Assembly in 1913 and became Title XII, chapter 8-A, of the 1913 Supplement. It contained no law-enforcement officer provision. The

first provision in connection with this legislation was enacted in 1923 by chapter 17 of the Fortieth General Assembly. It became section 1422, 1924 Code. We will quote this provision, because the changes, to which we will refer later, only pertain to part of the section. "Any policeman (except those pensioned under the policemen's pension fund created by law), any sheriff, marshal, constable, and any and all of their deputies, and any and all other such legally appointed or elected law-enforcing officers, who shall, while in line of duty or from causes arising out of or sustained while in the course of their official employment, *meaning while in the act of making or attempting to make an arrest or giving pursuit, or while performing such official duties where there is peril or hazard peculiar to the work of their office,* be killed outright, or become temporarily or permanently physically disabled, or if said disability result in death, shall be entitled to compensation, the same to be paid out of the general funds of the state for all such injuries or disability." (Emphasis ours.)

In the sequence of legislative development the case of Roberts v. City of Colfax (1935), 219 Iowa 1136, 1140, 260 N.W. 57, 59, becomes important. The case involved a night marshal who lost one eye from the accidental discharge of his revolver when it fell from his pocket while he was engaged in cleaning the floor of the city jail. The court denied compensation from state funds and said that the cleaning of the floor in the city jail was not an official act in which there was peril or hazard peculiar to the work. The court stated: "It is quite apparent from the history of this provision and from the express statements of the statute itself that it was not intended to compensate peace officers for all injuries that might be suffered by them while performing official duties. The legislature itself expressly confined the application of the statute to injuries sustained in three classes of cases: First, while making or attempting to make an arrest; second, while giving pursuit; and third, while performing official duties where there is peril or hazard peculiar to the work of their (peace officers') office."

In 1945 the Fifty-first General Assembly (chapter 80, section 1) amended section 1422 by striking therefrom the words "meaning while in the act of making or attempting to make an

arrest or giving pursuit, or while performing such official duties where there is peril or hazard peculiar to the work of their office,". As an indication of the intention of the legislature to liberalize the section, an explanation was filed in the House (H. F. 193) stating the reason for the change: "This amendment is proposed for the reason that judicial interpretation (*Roberts v. City of Colfax,* 219 Iowa 1136) has practically nullified any protection under the present statute. Peace officers must be armed at all times. They are subject to call of duty under all conditions and at all hours and are subjected thereby to many extreme hazards other than hazards incidental to making an arrest or giving pursuit." The enacting clause assists interpretation. "AN ACT to amend sections one thousand four hundred twenty-one (1421) and one thousand four hundred twenty-two (1422), code, 1939, relating to compensation to be paid conservation officers and peace officers disabled or killed *while performing official duties* * * *." (Emphasis ours.)

The latest legislative change was made by the Fifty-second General Assembly in 1947. Section 1422 had now become section 85.62, 1946 Code. The previous section 85.62 was repealed and a complete new section was enacted in lieu thereof. It is not necessary to requote the full section because there was only one change made. For purposes of clarity we will quote the repealed provision and the new provision. The provision repealed was: "appointed or elected law-enforcing officers, who shall, while in line of duty or from causes arising out of or sustained while in the course of their official employment,". The new provision is: "appointed or elected law-enforcing officers, who shall sustain an injury while performing the duties of a law-enforcing officer and from causes arising out of and in the course of his official duty, or employment as a law-enforcing officer,". This is the provision now effective as to the cases at bar.

III. The Deputy Commissioner's opinion, and appellee's argument, state the latest change in the section is more restrictive than previous provisions as to the rights of law-enforcement officers. We are not in accord with this interpretation. The emphasis now is on "law-enforcing officer" and "causes arising out of and in the course of his official duty, or employment."

Outside of some obvious exceptions, to which we will refer here-inafter, the duties of a law-enforcing officer denote every duty in the category of his work; routine, insignificant, important, hazardous or nonhazardous. The question of a law-enforcing officer's duty is not alone one of actuality, but of potential occurrences due to his work. The statute operates as to all eventualities arising while the law-enforcing officer, as such, is on duty. To say "arising out of and in the course of his official duty" broadens the base far beyond arrest, pursuit, peril and hazard. In addition to regular hours of work, he is subject to call at any time, in case of violation of the peace.

The provisions of the peace statute are helpful in defining his duties. Section 748.4, 1954 Code, provides:

"It shall be the duty of a peace officer and his deputy, if any, throughout the county, township, or municipality of which he is such officer, to preserve the peace, to ferret out crime, to apprehend and arrest all criminals, and insofar as it is within his power, to secure evidence of all crimes committed, and present the same to the county attorney, grand jury, mayor or police courts, and to file informations against all persons whom he knows, or has reason to believe, to have violated the laws of the state, and to perform all other duties, civil or criminal, pertaining to his office or enjoined upon him by law. Nothing herein shall be deemed to curtail the powers and duties otherwise granted to or imposed upon peace officers."

43 Am. Jur., Public Officers, section 250, states: "The duties of a public office include all those which fairly lie within its scope, those which are essential to the accomplishment of the main purposes for which the office was created, and those which, although incidental and collateral, are germane to, or serve to promote or benefit, the accomplishment of the principal purposes."

There is a definite line of demarcation of which we should take note. In some small towns and villages a law-enforcement officer is hired for divided duties. Because law-enforcement duties are not essential for a full day's work, he is sometimes the water commissioner, street commissioner or park commissioner for a certain allotted time, and while engaged in such, or kindred duties, he does not come under the provisions of section 85.62.

While performing such duties he is an employee of the town or village and is covered by the workmen's compensation provisions pertaining to his employer.

IV. The Deputy Commissioner has written an extensive and informative opinion. It was adopted and affirmed by the commissioner and the trial court. When analyzed, the deputy still bases his final reasoning on the theory of peril and hazard, contained in the early provisions of section 85.62, but long since repealed. He stated:

"Therefore in order for section 85.62 to be reconciled with the rest of the Workmen's Compensation Act it must be presumed that peace officers were intended to be compensated by the State of Iowa, and not the employer, for injuries sustained in the performance of duties which are extra hazardous and which are peculiar to and inherent in peace officer employment. * * * The duties that the employee was performing when injured (in these cases) were not such official duties that involve any peril or hazard peculiar to and inherent in law-enforcement employment."

He still depends on the reasoning in Roberts v. Colfax, supra, when he states: "Though the statute was amended and broadened somewhat in 1939 the words spoken by the Supreme Court in 1935 in Roberts vs. City of Colfax, ibid., are still applicable." This case was nullified by the legislature in repealing certain parts of section 85.62, and substituting liberalized provisions. There is one theory presented in the deputy's opinion which we should consider briefly. He contends section 85.62 is contrary to the fundamental theory of Workmen's Compensation Acts, in that there is no employer-and-employee relationship between the State and the law-enforcing officer. Appellees also raise the question by alleging the officer is always covered by his employer's workmen's compensation insurance. The facts are as stated, but the legislature has ample authority to enlarge or change workmen's compensation coverage. The State receives benefits for the obligation it assumes. The legislature, in its wisdom, has recognized this. While a law-enforcing officer is working for the village, town, city or county, he is also working for the State. State statutes may be violated. State agencies such as Governor, Attorney General, State Bureau of Investigation, State Game War-

dens, Conservation Officials, State Highway Commissioner and patrol, and perhaps others, can and do in hundreds of instances throughout the year, call upon the local law-enforcement officers for information and assistance. The State as an entity pays nothing for this, except the legislature has now provided that if any such officers are injured or killed while on duty, the State will compensate in accordance with the provisions of Workmen's Compensation Act.

■■ V. Appellees contend: "A finding by the Industrial Commissioner *upon sufficient evidence* is binding on the reviewing Courts." (Emphasis ours.) As worded the statement is correct, but because of the evidence in these cases is not applicable. The commissioner's ruling assumes the character of a jury verdict, when there is conflict in the evidence, and the decision is based on substantial evidence. In such cases the trial court and this court are bound by the findings of the commissioner. Wittmer v. Dexter Mfg. Co., 204 Iowa 180, 214 N.W. 700; Smith v. Soldiers' & Sailors' Memorial Hospital of Henry County, 210 Iowa 691, 231 N.W. 490; Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N.W. 254; Reynolds v. George & Hoyt, 230 Iowa 1267, 300 N.W. 530; Dailey v. Pooley Lumber Co., 233 Iowa 758, 10 N.W.2d 569. If there are not sufficient facts in the record to support the findings of the Industrial Commissioner, the courts may review and set aside his action. Section 86.30, 1954 Code; Rish v. Iowa Portland Cement Co., 186 Iowa 443, 170 N.W. 532; Guthrie v. Iowa Gas & Electric Co., 200 Iowa 150, 204 N.W. 225; Enfield v. Certain-Teed Products Co., 211 Iowa 1004, 233 N.W. 141; Almquist v. Shenandoah Nurseries, Inc., 218 Iowa 724, 254 N.W. 35, 94 A. L. R. 573; Hamilton v. P. E. Johnson & Sons, 224 Iowa 1097, 276 N.W. 841. Section 86.30(3) is specific on the subject, and can well be the basis of our decision:

"Decision on appeal. Any order or decision of the industrial commissioner may be modified, reversed, or set aside on one or more of the following grounds and on no other: * * *

"3. If the facts found by the commissioner do not support the order or decree. * * *."

We said in Almquist v. Shenandoah Nurseries, Inc., supra, "So, if, as contemplated by the statute just quoted [same as

quoted above], the evidence does not sustain the conclusion reached by the industrial commissioner, then the courts may set aside, modify, or reverse his ruling."

In the cases at bar the facts are undisputed. The question before us is one of law, and the facts do not support the decrees.

VI. We have not passed on section 85.62 since Roberts v. Colfax (1935), supra. That case became the basis for material and far-reaching legislative amendments and changes. Based on these changes, we have adopted a construction which expresses present intention of the legislature. The decisions of the trial court are reversed.—Reversed.

All JUSTICES concur.