Myrle M. Ashby, appellee, v. School Township of Liberty (Lucas County) et al., appellants.

No. 49748.

(Reported in 98 N.W.2d 848)

1202

OctobER 20, 1959.

Stuart & Stuart, of Chariton, for appellants.

A. V. Hass, of Chariton, for appellee.

GARFIELD, J.—Plaintiff entered into a written contract with defendant school township on April 5, 1957, to teach a sub-district school nine months commencing September 2, 1957. She

taught until October 3 when the board of directors closed the school. Plaintiff remained willing and able to continue to teach. On March 7, 1958, she brought this law action to recover the salary provided by the contract for the school year less the amount paid her.

Subparagraph g of the contract provides "That in case the enrollment of said school becomes less than six this contract becomes null and void." Defendant contends it closed the school because the enrollment became less than six and the contract therefore became null and void under this provision. Plaintiff claims the quoted provision is illegal and void because, it is said, it violates section 279.13, Code, 1954. Upon trial to the court without a jury it upheld plaintiff's claim and rendered judgment for the amount sued for. Defendant has appealed.

■ I. Plaintiff first asks an affirmance on the asserted ground defendant did not plead as a defense its claim that the enrollment was less than six and the contract was therefore void because of subparagraph g, quoted above. We think the issue was before the trial court, was there considered and decided and the judgment should not be affirmed on this ground.

Plaintiff's petition contains a copy of the contract, alleges the school was closed October 3, 1957, and she has been damaged in the sum of $2080 by defendants' refusal to honor the terms of the contract. Defendants' answer states that because of lack of sufficient pupils in the school the directors were compelled to close it, plaintiff has been paid the proper amount under her contract for the time she taught and defendants were not able to keep the school open under Iowa laws; "plaintiff has been paid the amount due under her contract * * * and is not entitled to further compensation under her contract and Iowa laws."

Plaintiff's reply alleges that section 279.13, Code, 1954, prohibits a termination of a teacher's contract except under certain specified conditions, none of which exists here, "and termination of said contract by defendants *under its provisions* or otherwise, contrary to the definite term provided for by it and said statutes was illegal and void." Also that having permitted plaintiff to teach six weeks defendants waived any right to terminate the contract "as alleged in their answer *or otherwise.*"

(Emphasis added.) Plaintiff's reply further states that the contract specifically enumerates the instances in which plaintiff may be deprived of her compensation, they are limited to lack of certificate and dismissal, her certificate was in force at all times and she was not legally dismissed, she is therefore entitled to her compensation as provided in the contract.

It is perhaps of some significance that plaintiff's petition contains a second, alternative count in which she alleges three other residents of the township maliciously conspired with the school directors to interfere with plaintiff's contract rights by removing their children temporarily from the subdistrict until the directors closed the school and such temporary removal was with the purpose of eliminating plaintiff as a teacher and depriving her of the benefits of her contract.

There is no doubt the trial court understood defendant was relying upon subparagraph g of the contract as its authority for terminating the contract because school enrollment fell below six. In orally announcing his decision immediately following the brief trial he quoted this contract provision and said, "That is the question being raised by the board." Plaintiff's counsel expressed no disagreement with this announcement. The court went on to hold the contract could be terminated only for the causes enumerated in section 279.13 and "the fact the enrollment fell below six did not invalidate this contract, this provision in it to the contrary notwithstanding." The record contains further indication, details of which need not be stated, that the trial court understood the defense was bottomed upon subparagraph g of the contract.

It may be conceded defendants' answer does not clearly state its contention that the contract was terminated under subparagraph g on the ground the enrollment became less than six. (Defendants' present counsel did not enter the case until the appeal was taken.) The answer does, however, allege the school was closed because of lack of sufficient pupils and plaintiff has been paid the amount due under her contract. Subparagraph g of the contract, made part of the petition, furnished the only possible authority for closing the school because of lack of sufficient pupils enrolled at the time of closing.

Regardless of any deficiency in the answer, plaintiff's reply plainly tendered the issue on which the case was decided—that the contract could be terminated only on a ground specified in section 279.13, none of which exists here, "and termination of said contract by defendants under its provisions * * * was illegal and void." The reply also states defendants waived any right to terminate the contract "as alleged in their answer or otherwise." Further, that the contract limits the causes for which plaintiff may be deprived of her compensation to lack of a teacher's certificate and dismissal and she is therefore entitled to be paid.

Quite in point is Cuthbertson v. Harter Post No. 839, 245 Iowa 922, 928, 929, 65 N.W.2d 83, 87, 88, where plaintiff claimed on appeal defendant did not properly plead the statute of limitations and that it was its duty so to do under rule 101, Rules of Civil Procedure, which this plaintiff invokes here. The answer did allege " 'any such claimed contract or mechanic's lien is invalid, without force or effect, and void and the plaintiff is barred from recovery therefor.' " Of this allegation we said, "It will be observed no reference was made to the fact the action was barred by reason of a statute of limitations." Cuthbertson's reply denied his cause of action was barred. Our decision was "We might hold this issue was not properly pleaded but inasmuch as the plaintiff sought to meet it we are disposed to hold it was made an issue by his action."

This quotation is repeated and the holding in the Cuthbertson case approved in Thorson v. Board of Supervisors, 249 Iowa 1088, 1098-9, 90 N.W.2d 730, 736, where there was a failure to plead an affirmative defense as required by a statute. See also In re Adoption of Karns, 236 Iowa 932, 939, 20 N.W.2d 474, 478.

Defendant's answer was not attacked by motion for more specific statement, demurrer or otherwise. Until after the appeal was taken plaintiff made no claim the issue the trial court said was raised and on which he decided the case was not properly before it. Under these circumstances defendant's answer will be liberally construed in order to effectuate justice between the parties. The answer will be accorded the implications necessarily inferred, regardless of technical objections or informalities. It is now too late for plaintiff to question the sufficiency

of the pleadings. Wilson v. Corbin, 241 Iowa 593, 605, 41 N.W.2d 702, 709, and citations; Dawson v. Laufersweiler, 241 Iowa 850, 857, 43 N.W.2d 726, 730; Carlson v. Bankers Trust Co., 242 Iowa 1207, 1215, 50 N.W.2d 1, 6.

In Wilson v. Corbin, supra, plaintiff's petition in a negligence action failed to allege his freedom from contributory negligence but did state " 'he has at all times since his injury followed such instruction as he received from his doctors to the best of his knowledge and ability.' " Until a motion for directed verdict was made the petition was not attacked for failure to allege freedom from contributory negligence and the parties proceeded as if the issue were properly raised. We held:

"Where parties proceed without objection to try an issue, even though not presented by the pleadings, it amounts to consent to try such issue and it is then rightfully in the case." (Citations) Pages 605, 606 of 241 Iowa, page 709 of 41 N.W.2d. The holding is fully applicable here.

Other Iowa decisions to the effect that issues voluntarily tried, although not technically within the scope of the pleadings, are rightfully in the case include Thorson v. Board of Supervisors, supra, 249 Iowa 1088, 1098–9, 90 N.W.2d 730, 736, and citations; Weidert v. Monahan Post Legionnaire Club, 243 Iowa 643, 648, 51 N.W.2d 400, 402; Kelly v. Emary, 242 Iowa 683, 691, 45 N.W.2d 866, 871; Baehr-Shive Realty Co. v. Stoner-McCray System, 221 Iowa 1186, 268 N.W. 53; Des Moines Asphalt Paving Co. v. Lincoln Place Co., 201 Iowa 502, 207 N.W. 563.

II. Plaintiff next argues for an affirmance because, it is said, there is no evidence the school *enrollment* became less than six. Although the record is not as clear as it might be, we think it sufficient upon this point.

The county superintendent of schools testified:

"In the fall of 1957 the matter of whether this school should continue or be closed came up.

"Q. How did that arise? A. When school opened there was only four resident pupils there. * * * We knew there were only four pupils in school due to the report filed ten days after it opened."

Although the foregoing testimony remained in the record a stipulation later dictated by plaintiff's attorney stated that when plaintiff first attended the school in the fall of 1957 for teaching purposes there were four pupils in attendance and this existed until the school was closed by action of the directors on October 3.

It will be noticed the contract provides it becomes null and void if "the enrollment" becomes less than six. The testimony is only four pupils were "there" and "in school" according "to the report filed." (There was no objection to this last testimony.) The stipulation states four pupils were "in attendance" throughout the time plaintiff taught. No inquiry was made as to whether there was a difference between the number of pupils "there," "in school," or "in attendance" and the number enrolled. It seems improbable that with only four in attendance at all times before the school was closed, six or more were then enrolled. Also the report filed probably showed the enrollment.

Not only defendant's then counsel but the trial court evidently thought the record sufficient to show the enrollment was less than six. As stated, the court held "the fact the enrollment fell below six did not invalidate this contract * * *." Acceptance of plaintiff's argument would mean that an important part of the stipulation dictated by her counsel was irrelevant and immaterial to the controversy. We are not persuaded able counsel would so needlessly encumber the record.

This is a law action in which the evidence is not reviewable de novo here. The trial court's construction of it is entitled to some weight. Although neither the testimony nor the stipulation uses the word "enrollment" we are not disposed to hold, under all the circumstances, there is no evidence the enrollment became less than six.

III. On the merits defendants-appellants assign error in the holding that subparagraph g of the contract is illegal and void as in violation of section 279.13, Code, 1954. We think this assignment must be sustained.

The contract is headed "STANDARD CONTRACT WITH TEACHER." Its term is nine calendar months with a maximum of 180 teaching days. Subparagraph g is heretofore quoted. The contract contains a proviso that in case plaintiff's certificate be

legally revoked or not renewed during the nine months or that she be legally dismissed by the directors she shall not thereafter be entitled to compensation.

Another proviso is that the contract shall remain in force for the term stated and shall be automatically continued from term to term thereafter except as modified by mutual consent of the school board and teacher until terminated by a majority vote of the board and notification of the teacher on or before April 10, or by resignation of the teacher before April 15 of each year. Such termination shall take effect at the close of the school year in which the contract is terminated. "Provided further, that such contract may be terminated at any time by mutual consent of the school board and the teacher, and * * * that this act shall not affect the powers of a school board to discharge a teacher for cause under * * * section 279.24 * * *."

Section 279.13, Code, 1954, so far as now material, provides: "Contracts with teachers must be in writing, and shall state the length of time the school is to be taught, the compensation * * *, and that the same shall be invalid if the teacher is under contract with another board of directors in the state of Iowa to teach covering the same period of time, *until such contract shall have been released, and such other matters as may be agreed upon,* which may include employment for a term not exceeding the ensuing school year, except as otherwise authorized, and payment by the calendar or school month, signed by the president and teacher * * *. * * *

"Said contract shall remain in force and effect for the period stated in the contract and thereafter shall be automatically continued in force and effect for equivalent periods, *except as modified or terminated by mutual agreement of the board of directors and the teacher,* until terminated as hereinafter provided. On or before April 15, of each year the teacher may file his written resignation with the secretary of the board of directors, or the board may by a majority vote * * * cause said contract to be terminated by written notification * * * to the teacher not later than the tenth day of April; in event of such termination, it shall take effect at the close of the school year in which the contract is terminated * * *. * * * The

foregoing provisions for termination shall not affect the power of the board of directors to discharge a teacher for cause under the provisions of section 279.24." (Emphasis added.)

Section 279.24, referred to at the end of 279.13, provides the board may discharge a teacher for any good cause after full investigation and permission to the teacher to make defense.

The first paragraph of section 279.13 sets out certain matters contracts with teachers shall state. The only prohibition it contains is that the contract term of employment shall not exceed the ensuing school year, except as otherwise authorized. Not only is no other disability placed upon the contracting parties but the statute expressly permits the inclusion in the contract of "such other matters as may be agreed upon."

It is significant too that this first paragraph of 279.13 states that the contract shall be invalid if a teacher is under contract to teach another Iowa school for the same period of time, "until such [prior] contract shall have been released." This clearly implies that the teacher and the board of the school to which he or she is first under contract may agree upon a release from its obligations.

The second paragraph of 279.13 does not purport to specify what contracts with teachers shall state. It commences with the words "Said contract", obviously referring back to the contract the first paragraph of the statute describes—one that states such other matters as may be agreed upon. This second paragraph provides primarily for the automatic continuance of the contract for equivalent periods until terminated by resignation of the teacher on or before April 15 or vote of the school board and notification to the teacher not later than April 10.

In any event, the second paragraph of this statute states, "Said contract shall remain in force * * * except as modified or terminated by mutual agreement of the board of directors and the teacher," thus clearly recognizing the right of the parties to the contract to terminate it by mutual agreement. If this may be done after the contract is entered into it would seem the parties should be able to agree in the contract itself upon its termination upon the happening of a certain event such as a smaller enrollment than six.

Miner v. Lovilia Independent School Dist. (Evans, J.), 212 Iowa 973, 975, 234 N.W. 817, 819, is very similar to this case. A teacher's contract there provided " 'That either party to this contract on 20 days' written notice to the other may terminate [it].' " A dispute arose as to the grade the teacher was to teach and on September 13 the school district gave her notice of termination of the contract pursuant to the above provision. She brought action to recover her compensation for the school year, claiming the quoted part of the contract was void as inconsistent with section 4229, Code, 1927, which, so far as material here, was identical with the first paragraph of 279.13, Code, 1954, heretofore quoted. The trial court sustained the claim but we reversed the decision. The opinion states at pages 978, 979 of 212 Iowa:

"It will be noted that this section is affirmatively mandatory rather than prohibitive. It requires that the contract whatever it be, shall be in writing. It specifies certain specific subjects to be covered therein. It imposes no disability upon the contracting parties except that the term of service shall not exceed one year. Subject to this single disability, the right of contract, as between the contracting parties, is in no manner abridged. * * * In all other respects the contents of the contract are to be determined in writing by the mutual agreement of the contracting parties. This fact is emphasized by the express provision contained therein: 'and such other matters as may be agreed upon'. * * *. * * * The interpretation contended for by the plaintiff would require the contracting parties to fix upon a definite and invariable time of service and would deny to them the power of voluntary qualification upon any contingency. If their power were to be so restricted in the making of the contract, it would logically follow that they could have no power of voluntary modification or rescission *after* the contract was made. And yet the very converse of this is clearly implied by the express language of 4229. We refer here to the following statutory language: 'until such contract shall have been *released.*' * * * The clear implication of this language is that the teacher may voluntarily ask for, or tender, a release and that the school board may voluntarily grant it. * * * If they may

voluntarily abridge 'the length of time' after the making of the contract, they necessarily had the same power in the making of the contract. Under the statute they could have made the length of term as brief as they chose. They were subject to no minimum, but to a maximum only."

The Miner opinion analyzes at length and quotes with approval from Black v. Consolidated Independent Sch. Dist., 206 Iowa 1386, 1387, 1388, 222 N.W. 350, where a contract between a school district and plaintiff for transportation of pupils to school provided, " 'The board of directors reserves the right to terminate this contract at any time.' " In the driver's action to recover upon the contract after its termination by the board without cause it was contended the quoted language violated a statute which provided such a contract shall state the length of time contracted for and other matters. The decision holds:

"It is clear that the instant plaintiff could and did waive any right to be confronted with a formal charge as ground for a dismissal * * *. The board of directors exercised its right to terminate the contract * * *. This right was embodied in the contract itself. We view the stipulated reserved right as a valid and effective part of the contract, and in the exercise of the reserved right by the board no liability was incurred on its part."

Independent School Dist. v. Samuelson, 222 Iowa 1063, 1064, 270 N.W. 434, reaffirms both the Miner and Black cases. One Justice dissented from the Miner opinion but there was no dissent in the Samuelson case. There a contract of employment of Mr. M. J. Baker as school superintendent provided: " 'This contract may be terminated at any time, by the said second party, for any reason, by giving thirty days notice, in writing, of such intention to said first party.' " Some friction arose between the district and Baker and the former terminated the contract under the foregoing provision. Baker contended he could be discharged only for some good cause, after being permitted to make defense, pursuant to what is now section 279.24, previously referred to. We upheld the contract provision and the board's action in terminating the employment. After reviewing the Miner and Black precedents the opinion states, "Thus the question * * * is not one of first impression, having

been determined both in the Black case and in the Miner case * * *. We see no reason for a retreat from the rule announced in those two cases * * *." (Page 1069 of 222 Iowa.)

It will be observed the contract provisions upheld in the Black, Miner and Samuelson decisions against attacks similar to the one now urged are all broader than subparagraph g here in that they reserve unlimited authority to terminate the contract, with or without good cause. Here, however, the right is conditioned upon enrollment becoming less than six. Certainly the present contract provision is the more reasonable and less likely to result in arbitrary action.

McKim v. Petty, 242 Iowa 599, 603, 604, 45 N.W.2d 157, 159, analyzes the Samuelson case and says of it, "We do not disagree with this pronouncement. The teacher had not been discharged. The school board had merely terminated the teacher's contract under a provision authorizing it to do so. The only questions were the validity and interpretation of this provision of the contract."

Apparently the precedents referred to in this division were not called to the trial court's attention. In announcing his holding he twice stated there were no decisions of ours on the subject.

We cannot agree with plaintiff's argument that the precedents just reviewed are no longer applicable here because of the 1941 and 1945 amendments to the statute as it existed in 1931 when the Miner case was decided. The 1941 amendment (chapter 157, Acts 49th General Assembly) added to the then existing statute: "Such contract shall remain in force and effect for the term stated in the contract, and shall be automatically continued from term to term thereafter, except as modified by mutual consent of the school board and the teacher until terminated by * * * the school board or by written resignation of the teacher before April 15th of each year. * * * *Provided, further, that such contract may be terminated at any time by mutual consent of the school board and the teacher,* and provided further that this act shall not affect the powers of a school board to discharge a teacher for cause under and pursuant to section four thousand two hundred thirty-seven (4237)." (Emphasis added.)

The 1945 amendment (chapter 129, Acts 51st General Assembly) is a substitute for that just set out and leaves the statute as it appears in section 279.13, Code, 1954, heretofore quoted. The first sentence of the 1945 amendment is the same as the first sentence of the second paragraph of 279.13 and we repeat it now: "Said contract shall remain in force and effect for the period stated in the contract and thereafter shall be automatically continued in force and effect for equivalent periods, except as modified *or terminated* by mutual agreement of the board of directors and the teacher, until terminated as hereinafter provided." (Emphasis added.)

It will be noticed this second amendment inserts the words we have emphasized, "or terminated", in the sentence as enacted in 1941. The 1945 amendment, as will be seen from 279.13, quoted above, goes on to provide for termination by resignation of the teacher or vote of the school board not later than April of any year. This is plainly the termination "as hereinafter provided", to which the first sentence of the 1945 amendment refers. It is not the termination "by mutual agreement of the board * * * and the teacher" for which the statute provides.

The 1945 amendment omits the language we have italicized in the last sentence of the 1941 amendment, heretofore set out: "Provided, further, that such contract may be terminated at any time by mutual consent of the school board and the teacher." Plaintiff contends this omission removes from the statute any provision for termination of the contract by mutual agreement. This is the nub of her position on the merits and her attempt to avoid the effect of our precedents. The contention cannot be accepted.

The first sentence of the 1941 amendment stated the contract might be *modified* by mutual consent. It did not provide for *termination* by mutual consent. Such provision was found in the last sentence enacted in 1941. The 1945 amendment removes this provision but effectively adds it to the first sentence by inserting therein the words "or terminated." Thus, as previously explained, this sentence clearly recognizes the right of the parties to terminate the contract by mutual agreement as well as by resignation of the teacher or vote of the board not later than April. Unless this is true, the language "except as

modified or terminated by mutual agreement" is entirely meaningless. This is the effect of plaintiff's argument that such a contract may be terminated only by resignation of the teacher or vote of the board in April.

When the Miner case, supra, was decided the statute did not, as it does now, expressly recognize the right to terminate such a contract by mutual agreement. It did, as it does now, expressly permit inclusion in the contract of "such other matters as may be agreed upon" and impliedly permit release from a contract by mutual agreement. We think the authority of the Miner case and the others herein considered is strengthened, rather than rendered inapplicable, by the later amendments to the statute which clearly recognize the right of the parties to terminate the contract by mutual agreement.

Plaintiff's argument follows the general pattern of the dissenting opinion of the one Justice in the Miner decision. Its acceptance would be a repudiation of that decision as well as the later Samuelson case, supra, in which there was no dissent, and which in turn was approved in McKim v. Petty, supra, 242 Iowa 599, 603, 604, 45 N.W.2d 157, 159.

■ Concerning plaintiff's argument as to the purpose of the legislature in enacting section 279.13 we may say the intent of the legislature which is controlling is to be gathered from the statute itself. It is our duty to give it the interpretation its language calls for and not to speculate as to probable legislative intent apart from the wording used. " 'We do not inquire what the legislature meant. We ask only what the statute means.' " Lever Brothers Co. v. Erbe, 249 Iowa 454, 469, 87 N.W.2d 469, 479, and citations; Shelby County Myrtue Memorial Hospital v. Harrison County, 249 Iowa 146, 151, 86 N.W.2d 104, 108, and citations. See also Wall v. County Board of Education, 249 Iowa 209, 218, 86 N.W.2d 231, 236, 237; City of Emmetsburg v. Gunn, 249 Iowa 297, 300, 86 N.W.2d 829, 832.

■ A cardinal rule of statutory construction is that, if reasonably possible, effect should be given every part of a statute. Holzhauser v. Iowa State Tax Comm., 245 Iowa 525, 534, 62 N.W.2d 229, 234, and citations; Wolf's v. Iowa Employment Sec. Comm., 244 Iowa 999, 1006, 59 N.W.2d 216, 219, 220, and citations; Board of Park Commissioners v. Marshall-

town, 244 Iowa 844, 851, 58 N.W.2d 394, 398; 82 C. J. S., Statutes, section 346.

The construction for which plaintiff contends requires reading out of the first paragraph of 279.13 the provision that contracts with teachers shall state "such other matters as may be agreed upon." It renders meaningless language in the first sentence of the second paragraph clearly recognizing that such contracts may be "terminated by mutual agreement." It is inconsistent with language in the first paragraph of the statute which implies teachers' contracts may be released by mutual consent. Our decision gives effect to these and other provisions of the statute.

We need not consider whether, under our decision in Black v. Consolidated Independent Sch. Dist., supra, 206 Iowa 1386, 222 N.W. 350, approved in later cases, plaintiff, by signing the contract, waived any protection 279.13 may have given her under her construction of it.

■ Plaintiff calls attention to an attorney general's opinion it is contended supports her position. It has been carefully considered. It is in answer to a question involving quite a different factual situation from the one here and does not necessarily conflict with our decision. Of course opinions of the attorney general, while entitled to respectful consideration, are not binding upon us in any event and it is our duty to make independent inquiry as to the interpretation to be placed upon a statute. City of Nevada v. Slemmons, 244 Iowa 1068, 1071, 59 N.W.2d 793, 794, 43 A. L. R.2d 693; Lever Brothers Co. v. Erbe, supra, 249 Iowa 454, 470, 87 N.W.2d 469, 479, 480; State v. Garland, 250 Iowa 428, 434, 94 N.W.2d 122, 126.

■ IV. There is no merit to plaintiff's contention that defendant waived any right it had to declare the contract void by not doing so at the beginning of the term. The only precedent cited for this contention is Smith v. School District Twp., 216 Iowa 1047, 250 N.W. 126. It holds merely that a teacher's contract signed by the teacher and the director of the subdistrict but not by the board president was, under all the circumstances, ratified by the district. It has no application here.

■ This language from Independent School Dist. v. Samuelson, supra, 222 Iowa 1063, 1067, 270 N.W. 434, 436, is a

sufficient answer to this claim of waiver: "* * * it seems to be well settled by our decisions that estoppel or waiver will not lie against a governmental unit because of laches or acts of its officers which were without legal authority." (Citations)

Mitchell County v. Odden, 219 Iowa 793, 803, 259 N.W. 774, 780, cited in the Samuelson case, quotes this with approval: "It is the well-settled doctrine in this country, founded upon the most substantial dictates of reason and sound policy, that the government cannot be affected by the laches of its agents, * * *."

Further, there is no evidence of any intentional or voluntary relinquishment of a known right—the usual definition of waiver. Williams v. Stroh Plumbing & Electric, Inc., 250 Iowa 599, 602, 94 N.W.2d 750, 753, and citations. What is evidently claimed is an implied waiver from the single fact the contract was not canceled until October 3. There is no showing plaintiff understood there was a waiver, or was misled into believing a waiver was intended. See 31 C. J. S., Estoppel, section 69b, page 264, and section 74.

V. Plaintiff concludes her argument by asserting that in any event she is entitled to be paid for 29 days teaching at $13 per day and has received only $195, leaving $182 with interest yet due her. Defendants' reply brief ignores this assertion. The record is not clear as to the number of school days between August 26, when school opened (although the date fixed in the contract is September 2) and October 3, when the school was closed. Plaintiff is entitled to be paid at the contract rate of $13 per day for said days, less the amount paid her. Her petition alleges she was paid $260, rather than $195, as her argument asserts. If, upon remand of the case, the parties are unable to agree upon any balance that may be owing plaintiff for days the school was open the trial court should determine the matter after hearing evidence. With this exception plaintiff's petition should be dismissed.—Reversed and remanded.

All JUSTICES concur.